# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

CHARLES HERMAN.                              )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )
                                             )    C.A. No. N13C-11-105 CLS
BRP, INC., BRP US, INC.,                     )
TELEFLEX CANADA LIMITED                      )
PARTNERSHIP, TELEFLEX                        )
CANADA, INC., KONGSBERG,                     )
INC. (F/K/A TELEFLEX                         )
MEGATECH, INC.), and                         )
KONGSBERG AUTOMOTIVE                         )
HOLDING ASA.                                 )
                                             )
                    Defendants.              )

Date Decided:  April 13, 2015

On Defendant Kongsberg Automotive Holding ASA's Motion to Dismiss for Lack of Jurisdiction. **GRANTED.**

**OPINION**

Kevin J. Connors, Esquire, 1220 North Market Street, Wilmington, Delaware, 19899.  Attorney for Defendant Kongsberg Automotive Holding ASA.

Timothy E. Lengkeek, Esquire, 1000 North King Street, Wilmington, Delaware, 19801.  Attorney for Plaintiff.

**Scott, J.**

Defendant Kongsberg Automotive Holding ASA ("Kongsberg Holding") has moved to dismiss Plaintiff Charles Herman's ("Plaintiff") First Amended Complaint for lack of personal jurisdiction pursuant to Del. Super. Ct. R. 12(b)(2) and based on Delaware's long-arm statute, 10 *Del. C.* § 3104(c).  For the following reasons, Defendant Kongsberg Holding's Motion to Dismiss is **GRANTED**.

## Background

### I.  The Present Action

Plaintiff has alleged claims of strict products liability[1] and negligence against Defendants BRP, Inc. ("BRP"), BRP US, Inc. ("BRP US"), Teleflex Canada Limited Partnership ("Teleflex Canada"), Teleflex Canada, Inc. ("Teleflex"), Kongsberg, Inc. (f/k/a Teleflex Megatech, Inc.) ("Kongsberg"), and Kongsberg Holding.  Plaintiff's Complaint is based upon personal injuries Plaintiff allegedly sustained as a result of a motor vehicle accident that occurred on August 8, 2012 in Sturgis, South Dakota.  Plaintiff alleges that while participating in a test drive of a 2012 Can-Am Spyder Roadster, which was then owned by Defendant BRP US, the vehicle and/or its steering mechanism malfunctioned or failed to turn, causing it to run off the road and crash.  Defendants Kongsberg Holding and Kongsberg each filed a motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction on April 10, 2014.

---

[1] The Court does not address the issue in this opinion, but notes that Delaware law does not provide for claims sounding in strict products liability.

2

On July 10, 2014, Plaintiff filed his First Amended Complaint, which brings the same causes of action as the original Complaint. To address the jurisdiction issue, Plaintiff's First Amended Complaint alleges that Kongsberg Holding and Kongsberg have consented to jurisdiction or waived any jurisdictional challenge, or alternatively, have sufficient minimum contacts with Delaware to comport with 10 *Del. C.* § 3104 and Constitutional Due Process. On September 12, 2014, Defendants Kongsberg Holding and Kongsberg each filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Superior Court Rule 12(b)(2) for lack of personal jurisdiction.[2]

Plaintiff is a resident of North Carolina. Defendant Kongsberg Holding is a non-operational Norwegian holding company, and the parent corporation of Defendant Kongsberg. Plaintiff and Defendant Kongsberg Holding are the relevant parties to this motion to dismiss. Defendant Kongsberg, a Canadian corporation and subsidiary of Defendant Kongsberg Holding, is a relevant nonparty to this motion to dismiss. Defendant Teleflex, a Delaware corporation with its principal place of business in Limerick, Pennsylvania, is also a relevant nonparty to this motion to dismiss.

---

[2] Pursuant to an Order dated March 24, 2015, Plaintiff's First Amended Complaint was dismissed against Defendant Kongsberg on the basis that this Court lacks personal jurisdiction over Defendant Kongsberg. For that reason, the remainder of this opinion addresses only Defendant Kongsberg Holding's motion to dismiss.

## II. The Earlier Delaware Action[3]

On June 5, 2009, Kongsberg Holding filed its Complaint against Teleflex in the United States District Court for the District of Delaware ("the Earlier Delaware Action").[4] The Complaint alleged three counts of breach of contract by Teleflex. The bases for these breaches were the Purchase Agreement, entered into by Kongsberg Holding and Teleflex on October 14, 2007, and a Supply Agreement for Marine and Power Products ("Supply Agreement"), which was entered into by Kongsberg Holding and Teleflex on December 7, 2007.[5] The Supply Agreement was one of a series of subsequent agreements entered into pursuant to, and as exhibits to, the Purchase Agreement.[6] In its Complaint, Kongsberg Holding generally alleged that, in the Purchase Agreement, Teleflex agreed to indemnify Kongsberg Holding for losses arising or resulting from any breach of any covenant

---

[3] *See Kongsberg Automotive Holding ASA v. Teleflex, Inc.*, C.A. No. 09-414-GMS (D. Del.). On the record before the Court, the original Complaint filed by Kongsberg Holding against Teleflex in the Earlier Delaware Action is the only document from which the Court can identify the legal claims, and their bases, involved in that action. (D.I. 74, Exhibit A). Plaintiff also submitted a Kongsberg Holding motion and appendix to which contained a supplemental final pre-trial order (together "the Exhibits") from the Earlier Delaware Action to suggest that Kongsberg Holding's suit there concerned the defective Can-Am Spyder involved in the Present Action. (D.I. 74, Exhibits C & D). However, the Exhibits merely reference additional claims and counterclaim in the Earlier Delaware Action, which were apparently brought in one or more amended complaints. Moreover, both documents as submitted here are incomplete, as multiple pages are, inexplicably, missing from throughout each. For these reasons, the Court will not rely on any partial information contained in the Exhibits, and discusses only the original Complaint filed by Kongsberg Holding against Teleflex in the Earlier Delaware Action.

[4] Kongsberg Automotive Holding ASA's Complaint, C.A. No. 09-414-GMS (D. Del. Jun. 5, 2009); D.I. 74, Exhibit A.

[5] *Id.* at ¶¶ 8-11.

[6] *Id.* at ¶¶ 10-11.

or obligation set forth in the agreement, which consisted of the Purchase Agreement and its appendices, exhibits, and disclosure letters.[7]

More specifically, Count I of the Complaint alleged that, pursuant to the Supply Agreement, Teleflex agreed to be Kongsberg Holding's exclusive distributor of specified products for sale in Australia and New Zealand.[8] The Supply Agreement also contained a provision setting forth when and how Teleflex was permitted to cancel any orders.[9] Kongsberg Holding alleged that Teleflex violated the Supply Agreement in 2008 by the way in which it cancelled a particular order.[10]

Count II of the Complaint alleged that, when entering into the Supply Agreement, Teleflex knowingly provided Kongsberg Holding with inaccurate financial information, including product prices, which Kongsberg Holding later discovered and demanded Teleflex remedy.[11] Kongsberg Holding alleged that Teleflex's refusal to remedy those alleged misrepresentations constituted a breach of the Supply Agreement.[12]

Finally, Count III of the Complaint alleged that Teleflex breached its contractual obligation under the Purchase Agreement to file certain tax returns in

---

[7] *Id.* ¶¶ 8-9.
[8] *Id.* ¶¶ 18-20.
[9] *Id.* ¶¶ 21-25.
[10] *Id.* at ¶¶ 26-32.
[11] *Id.* at ¶¶ 34-39.
[12] *Id.* at ¶¶ 40-41.

the State of Texas and to pay all applicable taxes for the filing periods April 2001 through December 2004, and that this breach caused damages to Kongsberg Holding.[13]

The relief Kongsberg Holding sought in the Complaint was, (1) an order for Teleflex to indemnify Kongsberg Holding from all losses, damages, cost, and expenses arising out of Teleflex's breach of its covenants and obligations regarding the cancelled product order, improper product pricing, and the Texas sales and use tax audit; (2) an award of all damages arising from Teleflex's breaches of the Purchase Agreement and Supply Agreement; and (3) an award of costs and attorneys fees for that action.[14]

From the record before the Court, it appears that resolution of the Earlier Delaware Action is still pending in Delaware District Court.

## Parties' Contentions

Defendant Kongsberg Holding asserts that Plaintiff's First Amended Complaint must be dismissed because this Court cannot properly exercise specific or general personal jurisdiction over it. Kongsberg Holding argues that it lacks both sufficient contacts with Delaware and connection to the present action to

[13] *Id.* at ¶¶ 42-51.
[14] *Id.* at 7.

satisfy Delaware's long arm statute, 10 *Del. C.* § 3104(c).[15]  Additionally, Kongsberg Holding argues that its responses to Plaintiff's discovery requests on this jurisdictional issue further support that Kongsberg Holding lacks sufficient contacts with Delaware to be subject to general personal jurisdiction in this Court. Furthermore, Kongsberg Holding argues that it has not consented or waived its challenge to jurisdiction in this State as a result of the Earlier Delaware Action between Kongsberg Holding and Teleflex because both the parties and legal claims involved in the Earlier Delaware Action and Present Action are substantially unrelated.  Therefore, Kongsberg Holding asserts that this Court cannot properly exercise personal jurisdiction over it in this case.

Plaintiff asserts that this Court may properly exercise personal jurisdiction over Defendant Kongsberg Holding because Kongsberg Holding's voluntary efforts to litigate in the forum state constitutes consent to jurisdiction in this State. Plaintiff argues that Kongsberg Holding contracted to litigate in the Delaware forum for disputes arising from contracts relating to the Can-Am Spyder and then initiated that litigation in Delaware District Court regarding those contracts. Moreover, Plaintiff argues that Kongsberg Holding has insisted that the lawsuit take place in Delaware by rejecting opportunities to stay the Earlier Delaware Action and resolve that dispute in other forums where related litigation was

---

[15] Defendant cites the Declaration of its Chief Financial Officer, Trond Stabekk, as support for this argument.

pending. Plaintiff asserts that, for those reasons, Kongsberg Holding has availed itself of the privileges of the judicial forum in Delaware.

## **Standard of Review**

On a motion to dismiss for lack of *in personam* jurisdiction the plaintiff bears the burden of showing a basis for the trial court's exercise of jurisdiction over a nonresident defendant.[16] In determining whether a plaintiff satisfies this burden, Delaware courts will apply a two-prong analysis to the issue of personal jurisdiction over a nonresident.[17] The court must first consider whether Delaware's long arm statute, 10 *Del. C.* § 3104(c), is applicable.[18] Second, the court must evaluate whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment.[19] Due process requires the court to determine whether the defendant has minimum contacts with the forum state, and whether asserting personal jurisdiction comports with "traditional notions of fair play and substantial justice."[20] In other words, it must be "fair and reasonable" for the court to exercise jurisdiction over the nonresident party.[21]

---

[16] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005).
[17] *Id.*, at 438; *LaNuova D & B, S.P.A. v. Bowe Co., Inc.*, 513 A.2d 764, 769 (Del. 1986). *See* 10 *Del. C.* § 3104(c).
[18] *Id.*
[19] *Id.* (citations omitted).
[20] *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[21] *Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 2003 WL 77007, at *4 (Del. Super. Jan. 6, 2003).

When reviewing a motion to dismiss,[22] the Court must view the record in a light most favorable to the nonmoving party.[23] The allegations of the complaint are assumed to be true, and all reasonable inferences must be construed most strongly in favor of the plaintiff.[24] Additionally, the Court is not limited to the pleadings and may consider affidavits, briefs, and the results of discovery.[25] When, as here, such discovery is complete, "the plaintiff must allege specific facts supporting its position" that the nonresident defendant is subject to the court's personal jurisdiction.[26] If the plaintiff cannot demonstrate that the court has jurisdiction over the defendant based on the two-prong analysis, the court will dismiss the action against the moving nonresident party for lack of personal jurisdiction.[27]

## Discussion

### I. Personal Jurisdiction

Personal jurisdiction under the Delaware's long arm statute, 10 *Del. C.* § 3104(c), is either specific or general.[28] Specific jurisdiction turns on the nexus

---

[22] *See* Del. Super. Ct. R. 12(b)(2).
[23] *Aeroglobal Capital Mgmt.*, 2003 WL 77007, at *3.
[24] *Id.*
[25] *Hartsel v. Vanguard Group, Inc.*, 2011 WL 2421003, *7 (Del. Ch. Jun. 15. 2011) *aff'd,* 38 A.3d 1254 (Del. 2012) *cert. denied,* 133 S. Ct. 32 (2012).
[26] *See e.g., Sprint Nextel Corp. v. iPCS, Inc.,* 2008 WL 2737409 (Del. Ch. Jul. 14, 2008).
[27] *Fischer v. Hilton,* 549 F.Supp. 389, 392 (D. Del. 1982).
[28] *Aeroglobal Capital Mgmt.*, 2003 WL 77007, at *4.

between the nonresident defendant's Delaware contact and the cause of action,[29] and may be found where the plaintiff's claims arise out of the defendant's acts or omissions within the State.[30] General jurisdiction, on the other hand, provides the court with jurisdiction over a nonresident defendant regardless of whether there is a nexus between the claim and the defendant's Delaware contacts with the forum state.[31] Instead, general jurisdiction is based on a persistent course of conduct through which the nonresident defendant creates a general presence in Delaware.[32]

In this case, the Court cannot properly exercise specific personal jurisdiction over Kongsberg Holding.[33] Kongsberg Holding entered into a Purchase Agreement and two Supply Agreements with Teleflex in August of 2007.[34] It is well settled law that "a contract between a Delaware corporation and a nonresident to ... transact business outside Delaware, which has been negotiated without any contacts with this State, cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of that contract."[35] It is also well established

---

[29] *See LaNuova*, 513 A.2d 764.
[30] *Aeroglobal Capital Mgmt.*, 2003 WL 77007, at *4. *See* 10 *Del. C.* §§ 3104(c)(1)-(3).
[31] *LaNuova*, 513 A.2d 764. *See* 10 *Del. C.* § 3104(c)(4).
[32] *Id.*
[33] *See* 10 *Del. C.* §§ 3104(c)(1)-(3).
[34] *See* Kongsberg Automotive Holding, ASA's Answers to Plaintiff's Second Set of Interrogatories, at 3. Importantly, neither party to this motion asserts otherwise. Also in August of 2007, Kongsberg Holding entered an agreement with E.I. Nemours & Co., which contained a Delaware choice of law provision. Again, neither party here asserts that the business transactions subject to this agreement took place within the State.
[35] *Newspan, Inc. v. Hearthstone Funding Corp.,* 1994 WL 198721, *6 (Del. Ch. May 10, 1994); *see Abajian v. Kennedy,* 1992 WL 8794, *10 (Del. Ch. Jan. 17, 1992) ("It is well established law that merely contracting with an entity that is incorporated within a forum state

10

that a choice of Delaware law provision in a contract is not, of itself, a sufficient transaction of business in the State to confer jurisdiction under § 3104(c)(1).[36] Though Teleflex is a Delaware corporation and all three agreements contained Delaware choice of law and venue provisions, the business transactions contained in the agreements took place outside of Delaware. Moreover, Plaintiff and Kongsberg Holding are nonresidents, and Plaintiff's alleged injury occurred outside of this State. Thus, Kongsberg Holding merely entering three contracts with a Delaware corporation, which contain Delaware choice of law provisions, without more, is not sufficient to establish specific jurisdiction over Kongsberg Holding.

Nor can the Court properly exercise general personal jurisdiction over Kongsberg Holding.[37] "When a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contact with the forum, the state has been said to be exercising 'general jurisdiction' over the defendant."[38] In asserting such jurisdiction, the *Sears* court opined that "[i]n order

---

does not provide necessary connections between the contract and the forum to support a finding of jurisdiction.").

[36] *Intellimark, Inc. v. Rowe,* 2005 WL 2739500, *2-3 (Del. Super. Oct. 24, 2005) (holding that the nonresident defendants' signatures on a promissory note, which contained a Delaware choice of law provision, were not a sufficient transaction of business in this State to confer jurisdiction); *see also Summit Investors II, L.P. v. Sechrist Indus., Inc.,* 2002 WL 31260989, *4 (Del. Ch. Sept. 20, 2002) (holding that a Delaware choice of law provision is insufficient to satisfy the Constitutional minimum contacts test).

[37] *See* 10 *Del. C.* § 3104(c)(4).

[38] *Sears Roebuck & Co. v. Sears plc, et al.,* 744 F.Supp. 1289, 1304 (D. Del. 1990).

to assert general jurisdiction, the defendant's activities in the forum must be continuous and substantial."[39]   Based on the additional discovery on this jurisdictional issue and parties' submissions, the Court finds an absence of any contacts between Kongsberg Holding and Delaware that are regular, persistent, or the source of substantial revenue.[40]

Moreover, the Court does not find exercising general jurisdiction over Kongsberg Holding appropriate based on its status as the parent corporation to Defendant Kongsberg.  Personal jurisdiction over a foreign holding company may not be exercised merely because of that corporation's relationship with an allegedly at-fault subsidiary, even if the subsidiary is itself a Delaware corporation.[41]   In this case, Defendant Kongsberg Holding is a non-operational Norwegian holding company.  Defendant Kongsberg is Kongsberg Holding's subsidiary that Plaintiff has alleged is at fault in this case.[42]  However, Defendant

---

[39] *Id. See Plumb v. Cottle,* 492 F.Supp. 1330, 1334 (D. Del. 1980) (The court, in applying subsection (c)(4) to the nonresident manufacturer of an allegedly defective lighting protection system, stated because the corporation sold no lighting systems in Delaware, maintained no branch offices in Delaware and did not have a license to do business in Delaware, it could not be subject to suit in Delaware).

[40] *See McElhaney v. Kelly-Moore Paint Co.*, 2013 WL 4829283, *4 (Del. Super. Aug. 14, 2013). *See* Declaration of Kongsberg Holding's Chief Financial Officer, Trond Stabekk.

[41] *See Freres v. SPI Pharma, Inc.*, 629 F.Supp.2d 374, 385 (D. Del. 2009) (finding court lacked personal jurisdiction over foreign parent of allegedly infringing subsidiary in patent case); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F.Supp.2d 644-45 (D. Del. 2006) (finding court lacked personal jurisdiction over foreign parent in antitrust case).

[42] As a non-operational holding corporation, Kongsberg Holding is merely the parent corporation of Defendant Kongsberg, which Plaintiff alleges designed, manufactured and sold component parts of the model motorcycle that allegedly injured Plaintiff. *See* Declaration of Kongsberg Holding's Chief Financial Officer, Trond Stabekk, at ¶¶ 18-20.

12

Kongsberg is not a Delaware corporation, but rather a Canadian corporation without personal jurisdiction contacts of its own that would support the exercise of general personal jurisdiction over Kongsberg Holding. More importantly, this Court has already granted Defendant Kongsberg's motion to dismiss for lack of personal jurisdiction.[43]

Therefore, Plaintiff has failed to meet the standards of Delaware's long-arm statute to establish that this Court may exercise general personal jurisdiction over Defendant Kongsberg Holding. Furthermore, the Court finds no evidence that would satisfy the Constitutional minimum contacts requirement because Kongsberg Holding does not have "continuous and systematic" contacts with Delaware so as to render Kongsberg Holding "at home" in this State.[44]

## II. Consent to Personal Jurisdiction

The Court has found that it cannot properly exercise personal jurisdiction over Kongsberg Holding. As such, the only remaining issue for the Court to decide is whether Kongsberg Holding has consented or waived its challenge to Delaware jurisdiction as a result of the Earlier Delaware Action with Defendant Teleflex in the District Court of Delaware. To resolve this issue, the Court must

---

[43]*See* Order dated March 24, 2015.
[44] *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014). *See* Declaration of Kongsberg Holding's Chief Financial Officer, Trond Stabekk.

determine whether the Present Action and Earlier Delaware Action are sufficiently related to constitute Kongsberg Holding's consent to jurisdiction in this State.

Personal jurisdiction over a party in one action does not automatically confer personal jurisdiction over that party in all future actions. However, "[b]ecause the defense of lack of personal jurisdiction is a personal right, 'it may be obviated by consent or otherwise waived.'"[45] Whether a party has consented or waived its challenge to personal jurisdiction is decided on a case-by-case basis.[46] "[C]onsent has been recognized as a basis for the exercise of general personal jurisdiction. In fact, a variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the Court."[47] For example, parties

---

[45] *Sprint Nextel Corp.*, 2008 WL 2737409, at *6

> As the court noted in *General Contracting,* it is possible to attempt fine distinctions between "waiver" and "consent" in terms of personal jurisdiction. It has been argued, for example, that waiver arises from actions taken within a suit and consent stems from conduct extrinsic to the suit proper. 940 F.2d at 22-23 (extensive internal citations omitted). The court also noted that another view on the distinction between consent and waiver, "turns on whether the manifesting conduct took place prior or subsequent to the suit's institution. Such a view recognizes that consent ordinarily consists of *ex ante* conduct while waiver ordinarily occurs in the form of actions taken *ex post." Id.* at 23 n. 3. Here, the issue is whether Horizon and Bright effectively *consented* to this Court's personal jurisdiction over them in this case based on their conduct in connection with the Earlier Delaware Action.

As in *Sprint Nextel*, the issue here is whether Kongsberg Holding effectively *consented* to this Court's personal jurisdiction over it in this case, based on its filing the Earlier Delaware Action.

[46] *See Wyrough & Loser, Inc. v. Pelmor Labs., Inc.,* 376 F.2d 543, 547 (3d Cir. 1967).

[47] *Sternberg v. O'Neil,* 550 A.2d 1105, 1109 (Del. 1988) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703 (1982)); *see also Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991).

may explicitly "submit to a given court's jurisdiction by contractual consent,"[48] or "stipulate to personal jurisdiction."[49]

Alternatively, "a court may assert personal jurisdiction over a party on the ground that the party consented to jurisdiction by submitting itself to a court's jurisdiction by instituting another, related suit."[50] To find this implicit consent to jurisdiction, the court must look for a "logical relationship" between the previous and current suits.[51] To do this, the court should consider whether the previous and current actions involve common issues of fact and law, which are supported or refuted by some overlapping evidence.[52] For example, similarity of the parties to the previous and current actions is one factor in determining whether the two actions are sufficiently related. However, a similarity of parties between separate actions brought in Delaware is not, by itself, sufficient to establish that a party to the first action has consented to personal jurisdiction in the present action.[53]

In this case, the Court must determine whether the Present Action and the Earlier Delaware Action are sufficiently related to show that Defendant Kongsberg

---

[48] *Sternberg,* 550 A.2d at 1109 n. 4 (citing *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311 (1964)).

[49] *Id.* (citing *Petrowski v. Hawkeye-Sec. Ins. Co.,* 350 U.S. 495 (1956)).

[50] *Foster Wheeler Energy Co. v. Metallgesellschaft AG,* 1993 WL 669447 (D. Del. Jan. 4, 1993) (citing *Gen. Contracting,* 940 F.2d at 22).

[51] *Foster Wheeler Energy Corp.*, 1993 WL 669447, at *4.

[52] *Id.*

[53] *Sprint Nextel Corp.*, 2008 WL 2737409, a*7 (where the fact that both actions in question involved several of the same parties was not sufficient for the Chancery Court to find that the previous present actions were sufficiently related).

15

Holding has consented to the Court's jurisdiction over it in this case. The legal claim involved in the Present Action is a products liability personal injury lawsuit, based on strict liability and negligence. The legal claim involved in the Earlier Delaware Action is multiple counts of breach of contract.[54] Defendant Kongsberg Holding filed the Earlier Delaware Action in 2009 against Defendant Teleflex.[55] Neither Plaintiff nor any of the other defendants in this case was a party to the Earlier Delaware Action.

As emphasized by the relevant case law, whether the previous and current actions arise from the same underlying transaction or transactions is the primary consideration for determining if the separate legal actions are sufficiently related for the court to confer jurisdiction over the nonresident defendant. In *Foster Wheeler Energy Co. v. Metallgesellschaft AG*, the court found that it had personal

---

[54] The original Complaint filed by Kongsberg Holding against Teleflex in the Earlier Delaware Action is the only document in the record before the Court upon which the Court can use to assess the relationship between the two actions. *See supra*, n.3. Plaintiff also submitted other Exhibits, the Kongsberg Holding filings from the Earlier Delaware Action, to support his argument that Kongsberg Holding filing "its related lawsuit concerning the defective Can-Am Spyder in Delaware" "operate[s] as consent to...Delaware's jurisdiction over matters concerning the Spyder's DPS." (D.I. 74 at 4, Exhibits C & D). However, neither document adequately articulates a specific claim brought by Kongsberg Holding against Teleflex, concerning the Can-Am Spyder involved here. Moreover, Plaintiff had the opportunity to provide the Court with a Kongsberg Holding amended complaint from the Earlier Delaware Action that identified a legal claim arising from a defective Can-Am Spyder, as Plaintiff asserts here, because the parties were given additional time to conduct the necessary discovery on this jurisdictional issue. For these reasons, and those discussed *supra*, the Court will only consider Kongsberg Holding's original Complaint from the Earlier Delaware Action in its analysis of the relationship between the two actions, as the original Complaint is the only document from the Earlier Delaware Action before the Court that identifies the legal claims brought by Kongsberg Holding against Teleflex, and the underlying transaction(s) from which those claims arose.

[55] *See* Kongsberg Automotive Holding ASA's Complaint, C.A. No. 09-414-GMS (D. Del. Jun. 5, 2009).

16

jurisdiction over the defendant as to the plaintiff's claim against it for patent infringement, when the defendant had procured the dismissal of that *exact* claim as a counterclaim in a parallel suit by the defendant against the plaintiff.[56] In *General Contracting & Trading Co. v. Interpole, Inc.*, the court found that a party had consented to personal jurisdiction in an action involving the same underlying transaction as an earlier action in which it had sued the plaintiff.[57] In *Attorneys Liab. Prot. Soc'y, Inc. v. Eisenhofer*,[58] the court found that the defendant implicitly consented to the court's personal jurisdiction when he filed a federal class action in Delaware because the second suit was "spawned by" and "closely related to" the federal class action.[59] Although the plaintiff in *Attorneys Liab. Prot. Soc'y, Inc.* was not named in the defendant's previous federal class action, both suits were, in part, based on the same underlying transaction.[60] While the Court finds the case law instructive on the focus of the Court's analysis, it finds these cases factually distinguishable because, here, there is no logical relationship between the underlying transactions giving rise to the Earlier Delaware Action and the Present Action.

---

[56] *See Foster Wheeler*, 1993 WL 669447, at *2-3, 11-12.
[57] *See Gen. Contracting,* 940 F.2d at 10, 22-24.
[58] 2011 WL 2089718 (Del. Super. Apr. 29, 2011).
[59] *Id.*
[60] *Id.* ("When [the defendant] sued the law firm for legal malpractice, he could have anticipated litigation in Delaware between the law firm and its carrier over coverage of his claim.  Having come to Delaware to sue the law firm, [the defendant] impliedly agreed to participate in litigation here over insurance potentially covering his damages.").

For this same reason, the Court also finds *Furnari v. Wallpang, Inc.*,[61] the case used by Plaintiff to support his consent argument, distinguishable. Plaintiff uses *Furnari* in support of his argument that Kongsberg Holding has consented to jurisdiction in this State because the *Furnari* court held that the litigant there had waived his jurisdictional challenge against the plaintiff after he filed suit on a related matter in Delaware Court of Chancery.[62] While the court in *Furnari* does not discuss the factors it considered in reaching its conclusion that the suits were related, the facts of that case establish that the various actions discussed by the *Furnari* court arose out of the same underlying transaction between the parties.[63] In other words, though the legal claims brought by each party to the transaction may have varied, each suit was filed by a party to and resulted from the same underlying transaction.[64]

Instead, the Court finds *Sprint Nextel Corp. v. iPCS, Inc.* more factually similar to this case. In *Sprint Nextel*, the court found that

> [D]espite some significant overlap, the facts underlying the Earlier Delaware Action differ from the facts underlying this litigation. The Earlier Delaware Action involved the effects of the Sprint-Nextel merger on the Sprint PCS affiliates as to Sprint's operation of Nextel's iDEN network in purported violation of the exclusivity provisions in the Management Agreements. Although this action involves many of the same parties and similar, if not identical, contractual provisions,

---

[61] 2014 WL 1678419 (Del. Super. Apr. 16, 2014).
[62] *Id.* at *10.
[63] *Id.* at *1-3.
[64] *See Furnari*, 2014 WL 1678419.

18

the underlying Clearwire Transaction is sufficiently different from and independent of the Nextel transaction that I cannot find Horizon and Bright's prior decision to bring the Earlier Delaware Action here also reflects their consent to being sued in Delaware on the current dispute. This is not, for example, a situation where Horizon and Bright had some role in bringing about the Clearwire Transaction or taking some action that precipitated the Current Delaware Action. Thus, I find that neither Bright nor Horizon has implicitly or explicitly consented to personal jurisdiction in this action regarding Sprint's Clearwire Transaction.[65]

The underlying transaction for the Present Action is the alleged personal injury that Plaintiff sustained while test driving a 2012 Can-Am Spyder in South Dakota. Whereas the underlying transactions for the Earlier Delaware Action are the 2007 Purchase and Supply Agreements that Kongsberg Holding and Teleflex entered into together, and the breaches of which are specifically described in Kongsberg Holding's Complaint against Teleflex. Generally, Kongsberg Holding alleged that, under the Purchase Agreement, Teleflex agreed to indemnify Kongsberg Holding for losses arising or resulting from any breach of any covenant or obligation set forth in the agreement, which consists of the Purchase Agreement and its appendices, exhibits, and disclose letters.[66]

More specifically, Count I of the Complaint alleged that Teleflex breached its obligations under the cancellation provision of the Supply Agreement by the

---

[65] *Sprint Nextel*, 2008 WL 2737409, at *7.

[66] Kongsberg Automotive Holding ASA's Complaint, C.A. No. 09-414-GMS, at ¶¶ 8-9.

way Teleflex cancelled a particular order.[67] Count II of the Complaint alleged that Teleflex breached the Supply Agreement by refusing to remedy alleged misrepresentations that Teleflex knowingly made to Kongsberg Holding regarding financial information when the parties were entering the Supply Agreement.[68] Count III of the Complaint alleged that Teleflex breached its contractual obligation to file certain tax returns in the State of Texas and to pay all applicable taxes for the filing periods April 2001 through December 2004.[69]

This comparison of the two actions shows that they are not sufficiently related to demonstrate that Defendant Kongsberg Holding implicitly consented to this Court's jurisdiction over it in the Present Action when it filed the Earlier Delaware Action in 2009. In *Sprint Nextel*, despite there being similar or identical legal claims and contractual provisions at issue in both lawsuits, the court found that the two lawsuits were not sufficiently related to enable the court to confer jurisdiction over the moving defendant.[70] Here, the legal claims in each action – breach of contract and personal injury – are entirely different. While the Earlier Delaware Action does involve two of the defendants that are parties to the Present Action, the remaining five parties – Plaintiff and the four other defendants – in the Present Action were not involved there. Nor would this minor similarity between

---

[67] *Id.* at ¶¶ 17-32.
[68] *Id.* at ¶¶ 33-41.
[69] *Id.* at ¶¶ 42-51.
[70] *Sprint Nextel*, 2008 WL 2737409, at *7.

the parties of both actions be sufficient to find the Present Action and Earlier Delaware Action related.[71]

Critically though, the underlying transactions from which the claims in both actions arose are different.[72] Similarly, the dispositive factor in the *Sprint Nextel* court's analysis was that, despite the similarity of parties and contractual provisions, the underlying facts of each action were sufficiently different from and independent of the other because the previous lawsuit was based on the Clearwire Transaction and the current lawsuit in that case was based on the Nextel Transaction.[73] The Court finds the differences underlying the two actions here even greater than those between the two lawsuits in *Sprint Nextel*. The underlying transactions from which the Earlier Delaware Action arose were the 2007 Purchase and Supply Agreements between Kongsberg Holding and Teleflex, and Teleflex's alleged breaches of those agreements through an improper cancellation, improper pricing, and failure to file and pay State of Texas taxes. There is no logical relationship between these underlying facts and transactions, and the underlying transaction from which the Present Action arose: Plaintiff's alleged personal injury sustained while test driving a 2012 Can-Am Spyder in South Dakota. Furthermore, the Earlier Delaware Action does not involve the same model year

---

[71] *See Sprint Nextel*, 2008 WL 2737409.
[72] *Id.*
[73] *Id.*

21

Can-Am Spyder involved in the Present Action.[74]  Therefore, the Court finds that the two actions are not sufficiently related for Defendant Kongsberg Holding's decision to bring suit against Teleflex in Delaware District Court to reflect its consent to be sued by Plaintiff in Delaware on the Present Action.[75]  Accordingly, this Court cannot properly exercise personal jurisdiction over Defendant Kongsberg Holding in this case.

## Conclusion

For the foregoing reasons, Defendant Kongsberg Holding's Motion to Dismiss for lack of jurisdiction is **GRANTED.**

**IT IS SO ORDERED.**

*/s/Calvin L. Scott*

Judge Calvin L. Scott, Jr.

---

[74] D.I. 75 at ¶ 2; Kongsberg Holding Reply Br. at ¶ 8.  It does not appear, based on the parties' submissions, that Plaintiff disputes that the model year Can-Am Spyder in the Earlier Delaware Action is not the same as that involved in the Present Action.

[75] *See Sprint Nextel*, 2008 WL 2737409, at *7.